# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JAMES THEODORE EDMONDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:15-cv-01060 |
| v. ) | Judge Trauger/Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Plaintiff has filed an accompanying Brief in support of the Motion. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on April 5, 2012, initially alleging that he had been disabled since July 5, 2009, due to heart attack, depression, arthritis in hands and feet, high blood pressure, and high cholesterol.[1] *See, e.g.,* Docket No. 10, Attachment ("TR"), TR 62, 133. Plaintiff's application was denied both initially (TR 62) and upon reconsideration (TR 63). Plaintiff subsequently requested (TR 72) and received (TR 32-61) a hearing. Plaintiff's hearing was conducted on January 15, 2014, by Administrative Law Judge ("ALJ") Brian Dougherty. TR 32. Plaintiff and vocational expert ("VE"), Gary Sturgill, appeared and testified. *Id.*

On March 28, 2014, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-28. Specifically, the ALJ made the following findings of fact:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 15, 2009 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et. seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Coronary Artery Disease; Hypertension; Hyperlipidemia; Atherosclerotic Cardiovascular Disease, status carotid endarterectomy; Skin Cancer; Gastroesophageal Reflux Disease; Degenerative Joint Disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an

---

[1] Although Plaintiff initially alleged a disability onset date of July 5, 2009 (TR 133), he amended his onset date to December 15, 2009, at his hearing (TR 36-37).

|   | impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). |
|---|---|
| 5. | After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c). |
| 6. | Through the date last insured, the claimant was capable of performing past relevant work as a hand packager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). |
| 7. | The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2009, the alleged onset date, through December 31st, 2009, the date last insured (20 CFR 404.1520(f)). |

TR 17-28.

On May 19, 2014, Plaintiff timely filed a request for review of the hearing decision. TR 10. On August 13, 2015, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to properly evaluate and accord appropriate weight to the uncontroverted opinion of his treating sources, Daniel Adkisson, P.A.C.,[3] and Julie Perrigin, M.D.; and (2) did not comply with SSR 83-20's instruction to "call on the services of a medical advisor when [the date of] onset must be inferred." Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

---

[3] Although Plaintiff refers to "David" Adkisson (*see, e.g.,* Docket No. 15, p. 4), the record indicates that his name is Daniel Adkisson (*see, e.g.,* TR 420). This discrepancy is not, however, material to the issues before the Court.

7

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Evaluation of the Medical Opinion Evidence**

Plaintiff first maintains that the ALJ failed to properly evaluate the opinion of his treating "nurse practitioner," Daniel Adkisson, P.A.C., and his treating physician, Julie Perrigin, M.D.[4] Docket No. 15, p. 9-10. Plaintiff asserts that given "Dr. Perrigin's repeated treatment of [Plaintiff] over such a long period of time," "there can be no question of her status" as Plaintiff's treating physician.[5] *Id.* at 10. Plaintiff further argues that "given the notes of treatment and seriousness of the conditions that Dr. Perregin was treating [Plaintiff] for," "the treating source opinion that Dr. Perrigin endorses [s]hould have been accorded great weight by the ALJ thus resulting in an allowance of benefits per the ALJ's own admission." *Id.* at 10, *citing* TR 27, 48, 575-77. Plaintiff argues that "the ALJ adopted or gave great weight to retrospective diagnosis for

---

[4] Although Plaintiff refers to Mr. Adkisson as a "nurse practitioner" (*see, e.g.,* Docket No. 15, p. 9), the record indicates that Mr. Adkisson is a Certified Physician Assistant ("PAC") (*see, e.g.*, TR 420). It appears that Mr. Adkisson works under the supervision of Dr. Perrigin. *Id.*; Docket No. 15, p. 9.

[5] Plaintiff also asserts that "although the ALJ questioned the absence of 'M.D.' next to [Dr. Perrigin's] name a look at the records clearly shows M.D. next to her printed name just below her signature." *Id.* at 10 (citations omitted). Plaintiff notes that he submitted Dr. Perrigin's credentials to the Appeals Council for review in order to avoid any further questioning of Dr. Perrigin's credentials as a medical doctor. *Id.*

8

most of the conditions Dr. Perrigin treated [Plaintiff] for but then fell short of giving great weight to her opinion of limitations and onset." *Id.* at 12. Plaintiff additionally contends that Dr. Perrigin and Mr. Adkisson's opinion should be given complete deference and controlling weight because "it is not only reasonable based on the only substantial evidence but it is an uncontradicted opinion," since "[t]here is no other doctor opinion addressing [Plaintiff's] onset, limitations or residual functional capacity in the record." *Id.*

Defendant responds that the ALJ "properly weighed Mr. Adkisson's opinion and Dr. Perrigin's statement," and appropriately found them not to be entitled to significant weight. Docket No. 16, p. 10. Specifically, Defendant asserts that the ALJ considered the treating relationship that Mr. Adkisson and Dr. Perrigin had with Plaintiff during the relevant time period of December 15, 2009 (alleged date of onset) to December 31, 2009 (date last insured), and noted that neither medical provider was treating Plaintiff during that time. *Id.* Defendants note that "Mr. Adkisson did not see Plaintiff until June 2010" and "Dr. Perrigin did not review Plaintiff's records until August 2010." *Id.* Defendant further asserts that "there is no indication that Dr. Perrigin ever personally examined Plaintiff." *Id.* Defendant also contends that the ALJ properly found the opinion statements to be conclusory, lacking any reference to supporting objective evidence, and unsupported by the record as a whole. *Id.*[6]

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling

---

[6] Defendant does not address Plaintiff's contention that the ALJ questioned the credentials of Dr. Perrigin.

9

weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

    (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

    (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

    (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

    (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

    (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

    The ALJ must articulate the reasons underlying his decision to give a medical opinion a

specific amount of weight.[7] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the medical opinion evidence as follows:

> . . . Included is a physical capacity questionnaire, as originally

---

[7] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

signed by Daniel J. Adkisson, PA-C and dated May 17, 2013, in which it was opined that the claimant is capable of sedentary lifting or carry [*sic*], but he is unable to sit for more than 2-3 hours, or walk more than two hours, so that he would be physically unable to sustain an eight-hour work day. He further opined that the claimant is unable to use his hands for any purpose, with no postural activities at all, save for rare bending and occasional reaching above the shoulder, with additional unspecified limitations secondary to "vision/SOB [shortness of breath]" (Ex. 13F at 1-2). In an addendum by a Dr. Julia Perrigin (credentials unspecified), dated December 30, 2013, it was further opined that all of these limitations were reasonable as of December 2009, and continuing to the present (*id*. at 3).

. . .

As mentioned, there is the treating source statement by Mr. Adkisson, the physician's assistant, and Dr. Perrigin, that speaks of an inability to perform beyond sedentary exertion or sustain an eight-hour work day. Specific attention is given to the addendum that asserts all limitations were in place as of the date last insured (Ex. 13F at 3).

According to the questionnaire itself, it appears Dr. Perrigin was involved in some way with the claimant's care; one would surmise it was in a supervising capacity to Mr. Adkisson. Assuming, then, that Dr. Perrigin is a treating provider – and this is not abundantly evident in the treating records, seeing that he was seeing Mr. Adkisson at a practice that bears his name – nonetheless, this is not dispositive of the matter before us. The reason is that the undersigned must consider the opinion in view of Social Security Ruling 96-2p, which directs that controlling weight may not be given to a treating source's medical opinion unless it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and which further directs that the undersigned cannot decide a case in reliance on a medical opinion without some reasonable basis for that opinion.

In this instance, the reasonable basis does not exist, for multiple reasons. First, as the questionnaire itself points out, neither Dr. Perrigin nor Mr. Adkisson had been involved in the claimant's care in any way until June of 2010. They were certainly not in a position to opine regarding the claimant's condition from direct

> experience. Second, this means that there needed to be acceptable objective medical evidence from *somewhere* to support the assertion as contemplated under SSR 96-2p; however, neither source discussed or cited such information. Indeed, neither source discussed the basis for the opinion at all. Third, a thorough review of the entire record failed to uncover such findings. Fourth and finally, Mr. Adkisson's own records pointed to largely unremarkable physical exam findings at a point well into 2010 (*see, e.g.*, Ex. 8F at 10-13). Indeed, all this is even before one considers the claimant's own testimony. For all of these reasons, the statement at Ex. 13F cannot be provided with significant weight.
>
> It appears from Ex. 1A and 2A that State agency medical consultants reviewed the file; however, there is not any form in the F section that states the basis for their conclusions. Specifically, in both Ex. 1A (initial) and 2A (reconsideration), the regulation basis that was used was "F2," meaning that there was not sufficient evidence of a severe impairment at any time prior to the date last insured, which was in the past. It follows that none of the consultants provided a residual functional capacity. Ultimately, the State agency analysis will not factor significantly into the result reached today, because while the evidence demonstrates the existence of severe impairments as of the date last insured, the claimant did not carry his burden in showing that it resulted in limitations above or beyond those involved with medium exertion at any point during the period in question.
>
> There were no other opinions in the file to consider.

TR 23-24, 25-26, *citing* TR 62, 63, 428-431, 572-74.

As the ALJ noted, neither Mr. Adkisson nor Dr. Perrigin treated Plaintiff during the relevant time period of December 15, 2009 (alleged date of onset) to December 31, 2009 (date last insured); neither can therefore opine from personal knowledge of Plaintiff's medical condition at that time. *Id.* at 26. The ALJ nevertheless reviewed Mr. Adkisson and Dr. Perrgin's opinion, which is based on a treatment relationship established with Plaintiff after the relevant time period, and found that it is not supported by medically acceptable clinical and laboratory

13

diagnostic techniques as required by the Regulations. *Id.* The ALJ further found that this opinion is inconsistent with the evidence of record, specifically with Mr. Adkisson's own treatment notes, which "pointed to largely unremarkable physical exam findings at a point well into 2010." *Id.*, *citing* TR 428-31.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* Although there are no other physician opinions in the record, as the ALJ observed, Mr. Adkisson and Dr. Perrigin's opinion is contradicted by Mr. Adkisson's own treatment notes, is unsupported by the evidence of record, and lacks a reasonable basis. TR 26.

Because the opinion of Mr. Adkisson and Dr. Perrigin was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord this evaluation controlling weight. Accordingly, Plaintiff's argument as to the weight that should be accorded to this opinion fails.[8]

---

[8] Regarding Plaintiff's assertion that the ALJ questioned the absence of M.D. next to Dr. Perrigin's name, as can be seen, the ALJ simply parenthetically noted that her credentials were unspecified, and then went on to state:

> . . . it appears Dr. Perrigin was involved in some way with the claimant's care; one would surmise it was in a supervising capacity to Mr. Adkisson. Assuming, then, that Dr. Perrigin is a treating provider – and this is not abundantly evident in the treating records, seeing that he was seeing Mr. Adkisson at a practice that

**2. Medical Expert**

Plaintiff contends that the ALJ erred by not consulting a medical advisor to assist in inferring Plaintiff's date of onset as required by SSR 83-20. Docket No. 15, p. 10-11. Plaintiff "submit[s] arteries don't clog overnight, breathing troubles develop over time, and arthritis just progresses." *Id.* at 12. Plaintiff argues that Dr. Perrigin opined that "it was reasonable given the progressive nature of [Plaintiff's] conditions that he could not perform beyond a sedentary level or arguably less than sedentary level of exertion as far back as December of 2009." *Id.* at 11, *citing* TR 575-77.

Defendant responds that SSR 83-20 "only applies when precise evidence is not available." Docket No. 16, p. 11. Defendant argues that such is not the case in the instant action since "Plaintiff admitted that his symptoms did not begin until June 2010, six months after the expiration of his insured status." *Id.* Defendant maintains that "[t]his is consistent with Plaintiff's decision to apply for retirement benefits in December 2009 and not disability benefits. *Id.* Defendant contends, therefore, that because "Plaintiff's testimony and corresponding treatment records provide the precise onset date, there was no need to use a medical advisor to infer the onset date." *Id.*

SSR 83-20 states, in relevant part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How

---

bears his name – nonetheless, this is not dispositive of the matter before us.

TR 26.

> long the disease may be determined to have existed at a disabling
> level of severity depends on an informed judgment of the facts in
> the particular case. This judgment, however, must have a
> legitimate medical basis. At the hearing, the administrative law
> judge (ALJ) should call on the services of a medical advisor when
> onset must be inferred. If there is information in the file indicating
> that additional medical evidence concerning onset is available,
> such evidence should be secured before inferences are made.

SSR 83-20, 1983 WL 31249 (1983).

Interpreting this portion of SSR 83-20, the Sixth Circuit has stated:

> Upon review, we find no merit to McClanahan's claim that the
> ALJ erred by not requiring a medical expert to infer an onset date
> pursuant to SSR 83-20. The portion of the ruling that McClanahan
> relies on contemplates situations when an individual claims
> disability and there is no development of the medical record on
> which the ALJ can rely to ascertain onset. This is not the case
> here. In fact, McClanahan's medical record was well developed
> and carefully reviewed by the ALJ.

*McClanahan v. Comm'r of Soc. Sec.* 474 F.3d 830, 836-37 (6th Cir. 2006).

In the case at bar, the ALJ discussed the evidence of record relating to SSR 83-20 as follows:

> There is no question that the claimant's present constellation of
> physical impairments easily preclude work at the medium
> exertional level as of today. Indeed, the undersigned does not seek
> to question the claimant's testimony, insofar as his current level of
> functioning. However, this case is postured as an appeal to the
> denial of his Title II application, where the date last insured was
> December 31, 2009. Viewed in this way, and using the lens of
> Social Security Ruling 83-20, the salient question is whether the
> objective medical evidence precludes medium exertion and/or
> provides for other functional limitations prior to December 31,
> 2009.
>
> After very careful consideration, this will be answered in the
> negative. With regard to the initial carotid artery surgery in July of
> 2010 (*see, e.g.,* Ex. 1F, 2F, 8F), the claimant's testimony was that

he was having no problems prior to the surgery until he experienced bleeding behind his right eye. When he retired in 2004 following 30 years with one company, he had no impairments at the time. He took care of his relatives and operated without significant limitation until he encountered the eye bleeding issue in 2010.

The medical evidence prior to July 2010 is sparse. The only treatment records prior to the date last insured was when he experienced some right-sided body numbness; however, this was not diagnosed as a chronic or even acute neurological event, but rather, was diagnosed as sinus disease as of June 2008, well before the amended alleged onset date (Ex. 2F at 118). Because of the remote timing of the event, the lack of a reoccurrence before the date last insured, and even the lack of a pattern of such events within a reasonable time afterwards, it becomes impossible to infer anything beyond a remote and isolated event as to the June 2008 incident. Indeed, one finds no treatment records at all as between June 2008 and the date last insured.

Even following the date last insured, it would be a number of months before the next event takes place, in June and July of 2010, relating to the abnormal carotid artery. In reviewing records relating to this incident, the claimant denied symptoms until a point less than a month before presentation at Baptist Hospital (*see* Ex. 2F at 96). Surgery was done to address the artery stenosis. Now the corresponding treatment records do not contain any functional limitations following the artery surgery; however, it also appears that the surgery was very successful in correct [*sic*] the stenosis as to that artery. This inference is further supported by the fact that the claimant continued to perform light yard work, mowing, and brisk walking, and indeed, such activities were noted in February 2012, long after the date last insured (Ex. 4F).

Additional points of reference include, but are not limited to the following –

- Largely unremarkable physical examination findings, as per the records at Adkisson Medical as of July and August 2010, with no mention of back pain until November 2010 (Ex. 8F);

- Evidence of no more than mild peripheral vascular disease

> > as of late 2010 (Ex. 2F);
>
> > • No known history of coronary artery disease, until December 2010, which also represents the first time the claimant alleged chest pain; he also does not allege dyspnea until a point well into the 2010 calendar year (Ex. 9F at 79-81);
>
> > • A stress test from December 2010 that was actually remarkable for his ability to tolerate the exercise demands inherent with the study, leading to an inference that to the extent he had any form of degenerative joint disease, the same was not a limiting factor, even a year after the date last insured (Ex. 9F at 58-60; *compare* Ex. 9F at 12, from August 2012, where the claimant had to stop the stress test early secondary to leg and hip pain); and,
>
> > • No significant evaluation regarding degenerative joint disease until one comes across the VA records from 2012 (Ex. 4F).
>
> In view of the foregoing, the undersigned concludes that while the claimant's impairments were indeed progressive, and even assuming that all severe impairments had their genesis as of December 31, 2009, the record as a whole emphatically does not support a residual functional capacity less than a full range of medium exertion prior to the date last insured. To the contrary, be [*sic*] remained active, even after the surgery; to repeat, these included brisk walking, yard work and mowing. These landscaping activities are within the medium range of exertional activity. As a result, it is impossible to infer a light residual functional capacity at any time prior to the date last insured. Such a change only happens afterwards, in 2012.

TR 24-25, *citing* TR 185-315, 318-87, 419-48, 449-532.

As demonstrated above, the ALJ reviewed the medical and testimonial evidence of record, considering this evidence in light of the date last insured.[9] TR 21-25. The ALJ found

---

[9] The ALJ's decision also contains charts of the medical evidence - one for each facility where Plaintiff received treatment. TR 21-23. Each chart contains the date(s) of treatment, page number(s) where the document is found in the record, and summaries of the various treatment

that even if Plaintiff's severe conditions arose prior to his date last insured, as Plaintiff has argued, the medical evidence and Plaintiff's own testimony demonstrate that he was capable of "a medium range of exertional activity" as of the date last insured. TR 25. Thus, it was not necessary for the ALJ to infer a date of onset. The ALJ's finding that Plaintiff was capable of the full range of medium work as of that date is supported by substantial evidence. *Id.* Accordingly, the ALJ did not violate SSR 83-20 in not calling a medical expert to testify to the disability onset date; Plaintiff's contention on this point fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

---

episodes of Plaintiff's medical history, including remarks by the ALJ relating to the document. *Id.*

_____
E. CLIFTON KNOWLES
United States Magistrate Judge